Copy

copy (2)

Spencer Durham,
    Petitioner

v.

R.M. Reish, Warden
    Respondents

FILED HARRISBURG, PA ~~SCRANTON~~
FEB 1 2001
MARY E. D'ANDREA, CLERK
Per ____ Deputy Clerk

RECEIVED SCRANTON
JAN 31 2001
MARY E. D'ANDREA, CLERK
Per ____ Deputy Clerk

Case No. 1: CV 01-0205

PETITIONERS' ~~PLAINTIFFS'~~ MEMORANDUM IN SUPPORT OF HABEAS CORPUS PETITION

**NOW COMES THE PETITIONER**, and hereby submits his memordum in support of his Writ of Habeas Corpus Petition.

This case is distinguished from outhers, in that it is significant that the warrent was served on the petitioner, as was the violation of release report, and the notice of final hearing. A hearing was scheduled for 2-28-00 and was then rescheduled for 2-16-00. It has been decided in outher cases that the due process requirement only startes when the warrent is served Here the petitioner was served and the hearing date was scheduled.

Before this date the U.S. marshels office contacted the N.Y.S. parole office that the peritioner would be moved unless they stated there intent on the warrent. No call was received, the petitioner was then moved to F.C.I. Raybrook and then to F.P.C. Schuylkill in Minersville, P.A. and based upon N.Y.S. parole not returning a call or stateing there intent the detainer was not filed with F.P.C. officals. In March of 2000, Donald Fries of the N.Y.S. divison of parole contacted R.A. Kranzel, AIE of Schuylkill records and requested a detainer be placed based upon the N.Y.S. parole warrent.

Again it is important to recognize that the petitioner was served, the process of parole revocation was started, then stoped, now N.Y.S.
Parole wants to sit on there warrent and wait for the petitioners' release with the federal prison system. Petitioners' letters requesting a timely revocation hearing have gone unanswered, it can only be taken that they have no intention of giveing the petitioner a final revocation hearing.

(1)

## DENIAL OF DUE PROCESS

The law is now established that due process is requied in parale revocation proceedings. Morrissey v. Brewer, 408 U.S. 471, 9 S. Ct. 2593, 33 L.Ed.2d 484 (1972). The issue is then wether there should exist an exception for a parole violator who is incarcerated in anouther state.

First, it is importent to recognize that Morrissey contemplates that due process for a parolee includes not only notice, opportunity to be heard and determination by a fair fact finder, but also, an opportunity to be heard within a reasonable time of the alleged parole violation.

In Smith v. Hooey, 393 U.S. 374, 89 S.C.t. 575, 21 L. Ed. 2d. 607 1969, the right to a speedy trial was limited to "anouther pending criminal charge" and not to a parole revocation hearing.

However, the speedy trial clause's applicabitity only to actual criminal prosecutiond does not mean that the due process clause rejects a prompt and timely hearing in outher procedures, formal or informal. Dim memories of witnesses can well affect the out come of a parole revocation haering as much as any criminal trial. Delay in any procedure may well affect it's fundamental fairness. Marcus v. Serch Warrant, 367 U.S. 717, 81 S. Ct. 1708, 6 L.Ed. 2d. 1127 (1961).

A fundamental requirement of due process is the opportunity to be heard... It is an opportunity which must be granted at a meaningful time and in a meaningful manner.(Emphasis added)

Mr. Justice Cardozo observed many years ago, the effect of the postponment of a remedy would be equivalent to a denial of justice altogether...."Thomann v. Rochester, 256 N.Y. 165, 176 N.E. 129, 132 (1931) And as early recognized by the Supreme Court, "promtness of decision.... in all judicial actions is one of the elements of justice." Forsuth v. Hammond, 166 U.S. 506, 513, 17 S. Ct. 665, 668, 41 L.Ed. 1095 (1897).

In applying Morrissey, it is essential to remember that "[w[hether any procedural protections are due [in any particular situation] depends on the extent to which an individual will be "condemned to suffer grievous loss," Morrisey, 408 U.S. at 481, 92 S. Ct. at 2600.

In the instant case failure to provide a timely revocation hearing may not only result in prejudice to the individual in the state seeking the revocation but the failure may also result in the prisoner suffering a "grievous loss" while confined in the federal prison system. Under these circumstances it is not possible to completely separate the costodial state from the state requesting the detainer.

The following punitive consequences during imprisonment in Federal prison flow from the placement of the detainer. The petitioner is:

1. Ineligible for half-way house
2. ineligible to participate in the furlough program
3. Ineligible to participate in a job out side of the facility

A prisoner with a detainer placed on him simply "exists" in the federal prison system. It has been urged that the possible loss of indivdual liberty which was the focal thrust of Morrissey, is not present in a detainer detainer situation because the individual is already incarcerated. In outher words, regardless of any favorable decision as to the parole revocation, that decision cannot affect the present comfinement. This argument, violates the intended spirit of Morrissey and the later decision of Gagnon v. Scarpelli, 411 U.S. 778, 93 S. Ct. 1756, 36 L. Ed. 2d. 656 (1973)

The Supreme Court has observed:
Society has a stake in whatever may be the chance of restoring him to a normal and useful life within the law. Society thus has an interest in not haveing parole revoked because of erroneous information or because of an erroneous evaluation of the need to revoke parole, given

the breach of parole conditions....And society has a further intrest in treating the parolee with basic fairness:fair treatment in parole revocations will enhance the chance of rehabilitation by avoiding r reactions to arbitrainess.Morrissey,408 U.S. at 484,92 S. Ct. at 2601 [emphasis added]. In Gagnon,the Cort emphasized that the state not only has interests in accurate finding of fact and an informed use of discretion, but that in addition the state should make certain "that it is neither unnecessarily interrupting a successful effort at rehabilitation nor imprudently prejudicing the safty of the community." Gagnon,411 U.S. at 785,93 S. Ct. at 1761 (emphasis added)

In Smith v. Hooey ,393 U.S. 374,89 S. Ct. 575 21 L. ED. U.S. 607 [1969] The possibility that the defendant already in prison might receive a sentence to run at least partially concurrent with the one he is serving maybe forever lost if tiarl of the pending charge is postponed. This possibility is just as much obscured and "forever lost" if a parole reaocation hearing is postponed.Similarly, the Smith Court appreciated the grievous loss to a prisoner as well as the state by the use of a detainer.

The Court Quoted from a former Director of the Federal Bureau of Prisons who said:  [I]t is in their effect upon the prisoner and our attempts to rehabilitate them that detainers are most corrosive.The strain of haveing to serve a sentence with uncertin prospect of being taken into the custody of anouther state at the conclusion interfers with the prisoners' ability to take maximum advantage of his institutional o opportunites. His anxiety and depression may leave him with little inclination toward self-improvement.. Smith,at 379,89 S. Ct. at 578.

(4)

It is possible to aruge that 1] a parole revocation hearing is needless since in most every case the detainer request will be placed because the petitioner has violated his parole through conviction of another felony and [2[ that the practical barries, including the expence involved in holding a revocation hearing when the indivdual is confined in another st will out weigh the benefits of possibly removeing the effects of the detainer.

The first could be a real one, if it were a forgone conclusion that a recocation and reincarceration would always result. However, this is not so. There are many possible alternatives. First not withstanding the conviction in another state, the Board of Parole may waive revocation. This often occures today but the decision to waive revocation is not desided untill the prisoner is about to released by the detainer state. The result is that because of the detainer, the prisoner is released without haveing been given the opportunity for rehabilation in prison..

Second, the argument that parole revocation and imprisonment automatically follow upon upon release overlooks the concern of the Supreme Court "that the defendant already in prison might receive a sentence at least partial concurrent with the one he is serveing...." Smith at 378, 89 S. Ct. at 577.

In Durhams' case if the New York Board of Parole would determine that the remaining time on Durhams' New York sentance could be served concurently with his Federal sentance, the detainer would be removed and Durham would be come eligible for rehabilitation programs within the Federal Prison system. It may well be that the State of New York Will reject that al alternative and simply decide that Durham be returned to the Federal Prison system and complete his time. But the point is that this should not be the inevitable result..

DATED THIS 17th DAY OF JANURAY, 2001

Spencer E. Durham/03900-082
F.P.C. SCHUYLKILL
P.O. BOX 670
MINERSVILLE, P.A. 17954-0670

5

WHEREFORE, petitioner prays that the court grant him relief he may entitled to this proceeding.

DATED AT MINERSVILLE, P.A. THIS 17th DAY of JANUARY, 2001

Spencer R. Durham/03900-082